**130**

George Robert PARSONS, Plaintiff,

v.

WEBER COUNTY, et al., Defendants.

No. 91–NC–105 B.

United States District Court,
D. Utah, C.D.

Aug. 30, 1993.

J. Paul Stockdale, Ogden, UT, for plaintiff.

Curtis J. Drake, Joann E. Carnahan, David H. Epperson, Dale J. Lambert, Stephen G. Morgan, Philip R. Fishler, Curtis J. Drake, Salt Lake City, UT, Robert K. Gonzales, Draper, UT, for defendants.

## MEMORANDUM DECISION AND ORDER

BOYCE, United States Magistrate Judge.

Plaintiffs, George Robert Parsons, and his personal representative, Paul Michael Parsons, seek to compel Dr. Ward H. Hedges, M.D., a psychiatrist under contract with Weber County Mental Health to respond to questions concerning a patient, Robert K. Gonzales. Gonzales allegedly was mentally ill and caused injury to and possibly the death of George Robert Parsons resulting from injuries Parsons sustained when he was incarcerated at the Weber County Jail. Gonzales allegedly beat Parsons at the jail where both were confined. The plaintiff served notice to take the deposition of Dr. Hedges, who is not a party to litigation (File Entry 173). Dr. Hedges objected and at first sought to invoke the Utah doctor/patient privilege statute. At a hearing on April 28, 1993, the court advised counsel that since this case involved a suit under 42 U.S.C. § 1983 the Utah doctor/patient privilege statute did not apply, see *Hancock v. Hobbs*, 967 F.2d 462 (11th Cir.1992) and that the Utah statutory privilege had been superseded by Rule 506, Utah Rules of Evidence (U.R.E.), which also was inapplicable. The court took the position that the situation presented the question of whether a federal psychotherapist/patient privilege existed under Rule 501, F.R.E. That issue has not been resolved in the Tenth Circuit. *Dixon v. City of Lawton*, 898 F.2d 1443 (10th Cir.1990); *United States v. Crews*, 781 F.2d 826, 830–33 (10th Cir. 1986). The court directed counsel to advise the court whether Dr. Hedges still insisted on the privilege and to advise the court of his position (File Entry 185, 192).

Counsel for Dr. Hedges advised the court that he was still insistent in his claim of a psychotherapist privilege as to the information plaintiffs sought from Dr. Hedges. A briefing schedule for the parties on the privilege issue was entered (File Entry 192).

Dr. Hedges filed a memorandum (File Entry 206) in which it is contended that a federal common law psychotherapist/patient privilege exists under Rule 501, F.R.E., and that it is applicable in this case (File Entry 206).

It is undisputed Dr. Hedges is a psychiatrist who is and was under contract with defendant Weber County Mental Health. As a part of the contract he provided medication management and case consultation through Weber County Mental Health to their clients and Dr. Hedges' patients. On or about September 25, 1991 Dr. Hedges treated Robert A. Gonzales at Weber County Mental Health. This was after the incident between plaintiff George Robert Parsons and Robert Gonzales at the Weber County Jail. During the scheduled deposition of Dr. Hedges he refused to provide information about the medical care and treatment he provided for Gonzales (see attachment A to File Entry 206).

The plaintiff filed a response memorandum to the Doctor's position. In the response the plaintiff asserts, based on information obtained from another source, that Dr. Hedges, after the incident with Robert Parsons, prescribed medications of Narvane and Lithium for Gonzales. The plaintiffs assert they need to know why Gonzales was not treated by Weber County Mental Health until after the assault of Parsons by Gonzales. Plaintiffs contend they need to question Dr. Hedges as to the treatment he provided Gonzales to determine why he was not treated prior to that time. It is contended that treatment by Dr. Hedges contradicts the position of Weber County Mental Health as to Gonzales uncooperativeness (see File Entry 219). It is also asserted by plaintiffs that they need to question Dr. Hedges as to why the medication Gonzales received after the assault was different from the medication provided before the assault. The plaintiff's position is, however, that Dr. Hedges must be examined as to his treatment and possibly some inquiry must be made into psychotherapist/patient communications and information derived by Dr. Hedges' from the relationship with Gonzales. This is not a situation where plaintiff seeks only community health medical records. In this case the requested information is a more direct penetration of the psycho-

therapist/patient relationship than that involved in *Dixon v. City of Lawton*, supra.

A useful starting point is to consider Rule 504 of the proposed Federal Rules of Evidence of 1973, which rule was proposed by the Supreme Court but not adopted by Congress. That rule provided for a psycho-therapist patient privilege. If a federal common law psychotherapist/patient privilege does exist, its dimensions would undoubtedly proximate the scope of proposed Rule 504.[1] Rule 504 of the proposed federal rules of evidence created a psychotherapist/patient privilege which extended to the patient a privilege "to refuse to disclose and to prevent any other person from disclosing confidential communications, made for the purpose of diagnosis or treatment of his mental or emotional condition, including drug addiction, among himself, his psychotherapist, or persons who are participating in the diagnosis or treatment under the direction of the psychotherapist, including members of the patient's family" proposed Rule 504(b). The privilege may be claimed by the psychotherapist on behalf of the patient. Proposed Rule 504(c).

The proposed federal rule is limited to confidential communications. It does not provide a general cloak of privilege as to anything observed or the treatment taken. The confidential communication under Rule 504 is defined in the same terms as the lawyer-client privilege. *Advisory Committee Note to Proposed Rule 504.*

Rule 501, F.R.E. provides that federal privileges are to be governed by the "Constitution, statutes of Congress, rules made by the Supreme Court" or "the principles of the common law as they may be interpreted by the Courts of the United States in light of reason and experience." Dr. Hedges argues for a common law psychotherapist/patient privilege under Rule 501, F.R.E. The plaintiffs argue in pragmatic terms that the need for questioning Dr. Hedges to obtain certain relevant information is essential.

[1]. Rule 506, U.R.E. (effective April 15, 1992) was modeled after Rule 503 of the Uniform Rules of Evidence and creates a physician and psychotherapist privilege as well as a doctor/patient privilege. Proposed Rule 504 of the F.R.E. 1973 is narrower than the Utah rule. Rule 503 of the Uniform Rules of Evidence is comparable to Rule 504 of the federal proposal as to the psychotherapist/patient provisions.

Privileges are inimical to the rectitude of decision making. They frustrate the quest for truth. However, in some instances truth and rectitude of decision must be subordinated to a more compelling social interest. Professor Wigmore set forth four general standards as to when a privilege was justified. Wigmore, *Evidence* (McNaughton Rev.) § 2285. The standards identified by Wigmore would be relevant in this case to the issue of whether a psychotherapist/patient privilege should be recognized. There is a significant split in the federal courts on whether a psychotherapist/patient privilege exists under federal law. In favor of the privilege, see *In re Zuniga,* 714 F.2d 632 (6th Cir.1983); *In re Doe,* 964 F.2d 1325 (2nd Cir.1992); *In re Grand Jury Subpoenas Duces Tecum,* 795 F.Supp. 1057 (D.Colo. 1992). Against the privilege see: *United States v. Corona,* 849 F.2d 562 (11th Cir. 1988); *Slakan v. Porter,* 737 F.2d 368 (4th Cir.1984); *United States v. Moore,* 970 F.2d 48 (5th Cir.1992). The legal and scholarly literature in support of the privilege, Note, *"The Case for a Federal Psychotherapist–Patient Privilege That Protects Patient Identity",* 1985 Duke LJ 1217 (1985); Slovenko, *Psychiatry and a Second Look at the Medical Privilege,* 6 Wayne L.Rev. 175, 184 (1960); *Advisory Committee Note to Proposed Rule 504, F.R.E.,* is offset by persuasive studies in opposition to such a privilege. Shuman & Weiner, *"The Privilege Study: An Empirical Examination of the Psychotherapist–Patient Privilege;* 60 N.C.L.Rev. 893 (1982); Klotz, *Limiting The Psychotherapist Privilege: The Therapeutic Potential,* 27 Crim.L.Bull. 416 (1991). An evaluation of these studies against Wigmore's standards, as well as an evaluation of the cases, would be appropriate to determine whether the federal common law should encompass a psychotherapist/patient privilege. However, if the issue of the privilege per se need not be addressed at this time or if it is premature, then such an analysis is unnecessary. *Dixon v. City of Lawton,* supra.

As noted before, the proposed rule did not go beyond confidential communications between psychotherapist and patient. This is the central area of concern in justification of the privilege. *In re Zuniga,* supra; *In re Doe,* supra. Where recognized, the psychotherapist/patient privilege is not an all encompassing privilege. *In re Doe,* supra. It does not exclude testimony which does not involve privacy matters, *Id.,* or which is merely the diagnostic assessment of the psychotherapist. Therefore, it is concluded that it would be premature at this time to rule on whether a psychotherapist/patient privilege does exist in this Circuit. Such a ruling is not, at this time, necessary to a resolution of this case. *Dixon v. City of Lawton,* supra. The plaintiff has specified certain areas of inquiry that would not be within a psychotherapist/patient privilege even if one were to be recognized. Dr. Hedges can be questioned on the medications he gave to Gonzales, on Gonzales' prior psychiatric history not based on communications from Gonzales, and why Gonzales' medication differed from that provided by prior treatment. Dr. Hedges could be examined as to why Gonzales was not previously treated if Dr. Hedges has such knowledge. However, Dr. Hedges should not be questioned about communications between Gonzales and the doctor. Such communications *could* be subject to a psychotherapist/patient privilege. Dr. Hedges, if asked about such matters, would be entitled to refuse to respond and to seek a ruling from this court on his claim of privilege. It may be that plaintiffs' counsel can obtain the needed information without intruding into the area of confidentiality or privacy that would require this court's ruling on whether a psychotherapist/patient privilege does exist under Rule 501, F.R.E. Therefore, **IT IS HEREBY ORDERED:**

The plaintiffs may take Dr. Hedges' deposition. The doctor should answer questions as to medications provided to Robert Gonzales, why they may have differed from those given previously to Gonzales by other health providers, Dr. Hedges' diagnosis of Gonzales, but not matters of confidential communication or which involve the privacy interests of Gonzales. If Dr. Hedges believes a question may be within a possible psychotherapist/patient privilege, he may refuse to answer and plaintiffs or Dr. Hedges may seek a ruling from this court as to whether such informa-

tion may be within a privilege or, finally, whether such a privilege exists.