Laura Sofia GUTIERREZ,
et al., Plaintiffs,

v.

Cesar BENAVIDES, et al., Defendants.

Civil Action No. 5:12–CV–18.

United States District Court,
S.D. Texas,
Laredo Division.

June 11, 2013.

402

Daniel Monahan, Israel M. Reyna, Jennifer K. Harbury, Texas Rio Grande Legal Aid, Inc., Weslaco, TX, for Plaintiffs.

Albert Lopez, Attorney at Law, San Antonio, TX, Molly Higgins Santos, Laredo, TX, Hector Carlos Ramirez, Office of U.S. Attorney, Laredo, TX, for Defendants.

## MEMORANDUM AND ORDER

J. SCOTT HACKER, United States Magistrate Judge.

Currently pending before the Court is "Plaintiffs' Motion to Compel," (Dkt. No. 86), filed April 12, 2013. Plaintiffs have specifically addressed their motion to compel to "Defendant United States and the individual [United States] Defendants," and have seemingly excluded the remaining Defendants. (*Id.* at 1). The parties have agreed that the disputed materials which form the basis for the present motion to compel "will be produced," and thus the discoverability of the documents is not at issue. (*Id.* at 2; *see also* Dkt. No. 87, at 8–9). The sole issues Plaintiffs and United States Defendants are unable to resolve are the terms of "an agreed protective order" and "whether or not certain records indicating official misconduct, abuse of power, or constitutional violations by the Defendants should be automatically held confidential and withheld from any public access." [1] (*See* Dkt. No. 86, at 2). Plaintiffs have attached a proposed protective order, one with "built-in flexibility," which affords Defendants the opportunity to "mark as confidential any additional records or portions thereof that do not automatically fall within the confidential matters" agreed upon.[2]

1. However, the parties have agreed that sensitive information such as "social security numbers, dates of birth, addresses, telephone numbers, ... the identities of police informants, and victims of, or witnesses to, crimes" will be "[held] confidential." (Dkt. No. 86, Attach. 1, at 2).

2. *See supra* note 1.

(Dkt. No. 86, Attach. 1, at 2). In their motion, Plaintiffs have made explicit that "confidential records are deemed to specifically *exclude* the official misconduct or constitutional violations." (*Id.*). The United States Defendants have responded to the motion to compel, (*see* Dkt. No. 87), arguing that "the disclosure of information contained in [the requested] documents could potentially cause great harm to the individual defendants, and ... they are entitled to much greater protection in that regard than provided in the draft protective order, which would allow for the public dissemination of the bulk of the material to be produced." (*Id.* at 4). Defendants seek to restrict the use of the "Privacy Act protected material," suggesting a protective order which would "deem all of the information disclosed to Plaintiffs as confidential, but would provide a means for the parties to use the information for all litigative purposes." (*Id.* at 9). The parties thereafter filed a reply and a surreply, providing the Court with ample briefing on their respective positions. (*See* Dkt. Nos. 89, 90). Although Defendants have not filed a motion for protective order, and thus the only motion before the Court is Plaintiffs' motion to compel, the Court will fashion the following order as if a motion for a protective order had indeed been filed. (*See, e.g.,* Dkt. No. 87, at 9).

■■■ The relevant portion of the Privacy Act dictates that "[n]o agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior consent of, the individual to whom the record pertains, unless disclosure of the record would be ... pursuant to the order of a court of competent jurisdiction." 5 U.S.C. § 552a(b)(11). As both parties seem to concede, the Privacy Act therefore "expressly authorizes disclosure of information 'pursuant to the order of a court of competent jurisdiction.' " *Gilbreath v. Guadalupe Hosp. Found. Inc.,* 5 F.3d 785, 791 (5th Cir.1993). Both parties also recognize that merely because documents are subject to the Privacy Act, it does not necessarily follow that those documents are exempt in their entirety from discovery. *Laxalt v.*

*McClatchy,* 809 F.2d 885, 888 (D.C.Cir.1987) ("The Privacy Act ... does not create a qualified discovery privilege as that concept is generally understood, and we find no basis in the statute or its legislative history for inferring one."); *Perry v. State Farm Fire & Cas. Co.,* 734 F.2d 1441, 1447 (11th Cir.1984); *Weahkee v. Norton,* 621 F.2d 1080, 1082 (10th Cir.1980). However, as the *Laxalt* court noted, "[a]lthough discovery standards under the [Federal Rules of Civil Procedure] permit access to relevant documents protected by the Act, those same FRCP standards give the District Court ample discretion to fashion appropriate protective orders upon a showing of 'good cause.' " 809 F.2d at 889. Thus, the fact that documents are subject to the Privacy Act is not irrelevant to the determination of whether disclosure should be ordered and whether the documents should be subject to a protective order. "Where the records sought are subject to the Privacy Act, the District Court's supervisory responsibilities may in many cases be weightier than in the usual discovery context." *Id.* A court must therefore "give due regard to general privacy concerns as manifested through the Act's coverage" when considering the "long-recognized principles governing discovery under the Federal Rules of Civil Procedure." *Marozsan v. Veterans Admin.,* No. S84–500, 1991 WL 441905, at *3 (N.D.Ind. June 24, 1991).

■■■ A protective order may be fashioned only after balancing the potential harm to the affected party and the need of the requesting party for the particular information. *Laxalt,* 809 F.2d at 890; *Perry,* 734 F.2d at 1447. Of course, Federal Rule of Civil Procedure 26 requires that "good cause" be shown before the court "issue[s] an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense...." Fed.R.Civ.P. 26(c)(1). The Fifth Circuit has found that "Rule 26(c)'s requirement of a showing of good cause to support the issuance of a protective order indicates that 'the burden is upon the movant to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements.' " *In re Terra Int'l,*

*Inc.*, 134 F.3d 302, 306 (5th Cir.1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n. 3 (5th Cir.1978)). As indicated above, United States Defendants assert that "the disclosure of information contained in [the requested] documents could potentially cause great harm to the individual defendants, and . . . they are entitled to much greater protection in that regard than [what is] provided in the draft protective order. . . ." (Dkt. No. 87, at 4). Outside of relying on the general protections of the Privacy Act, the conclusory allegation that "great harm" will result from dissemination of the requested documents is the extent of Defendants' support for the protective order. It therefore appears unsupported by "a particular and specific demonstration of fact," *see In re Terra Int'l*, 134 F.3d at 306, which suggests that United States Defendants have failed to carry their burden. However, because of the applicability of the Privacy Act to the materials requested by Plaintiffs, the Court will nonetheless "give due regard to [the Act's] privacy concerns" in determining the extent of protection that should be afforded the requested materials.

Although both courts within the Fifth Circuit and courts outside of this circuit grant protective orders in similar cases with some frequency, *see Gravolet v. Tassin*, No. 08–3646, 2009 WL 1210877, at *1–2 (E.D.La. May 4, 2009) (concluding that the "disciplinary records and personnel files regarding defendants" should be produced to the plaintiff, subject to a protective order "limiting the disclosure of investigative files to attorney's and expert's eyes only"); *Jones v. DeRosa*, 238 F.R.D. 157, 164, 166 (D.N.J.2006) (refusing to quash a subpoena seeking information contained in the defendants' internal affairs and personnel files, but since both parties agreed a protective order was appropriate, limiting the dissemination of the information to counsel and experts); *Walters v. Breaux*, 200 F.R.D. 271, 274–75 (W.D.La. 2001) (same); *Chauvin v. Lee*, No. Civ.A. 99–2200, 2000 WL 567006, at *1, *3 (E.D.La. May 8, 2000) (ordering production of the defendant's personnel files and internal affairs division and citizen complaint files, but because of the "legitimate privacy and confidentiality concerns," restricting the use of the records to purposes of the litigation); *Cannon v. Lodge*, No. Civ.A. 98–2859, 1999 WL 600374, at *1 (E.D.La. Aug. 6, 1999) (granting the motion to compel "with respect to the defendants' personnel records" and "with respect to investigative and complaint records," because the records were relevant to the plaintiff's allegations of excessive force, but ordering the records produced "pursuant to a protective order/confidentiality agreement to be prepared by the defendants"); *D'Antoni v. Roach*, No. Civ.A. 97–1799, 1997 WL 627601, at *4 (E.D.La. Oct. 10, 1997) (because of the relevance of the documents to plaintiffs' claims, ordering personnel and internal investigation files produced, again subject to the restriction that all information remain confidential and be "used only for purposes of this litigation"), other courts have aptly pointed out that "[d]isturbingly, some courts routinely sign orders which contain confidentiality clauses without considering the propriety of such orders, or the countervailing public interests which are sacrificed by the orders." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 785 (3d Cir. 1994) (citing other sources).

■ As indicated above, in determining whether to grant a protective order, the court must balance the requesting party's need for the information against the injury that might result if uncontrolled disclosure is compelled. *See id.* at 787. Through this balancing process, courts should afford due weight to the affected party's privacy interests. *See id.* (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34–36, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984)). Protective orders are intended to protect these privacy interests and prevent the infliction of unnecessary or serious pain on parties entitled to such protection. *Id.* Significantly though, "privacy interests are diminished when the party seeking protection is a public person subject to legitimate public scrutiny," as the public has a substantial interest in the integrity, or lack thereof, of those who serve in public office. *Id.* In this vein, courts should consider for what purpose the information is being sought—if the case involves matters of legitimate public concern or issues relating to public health or safety, those are factors

weighing against a protective order. *Id.* at 787–88; *see also Morrow v. City of Tenaha,* No. 2–08–cv–288–TJW, 2010 WL 3927969, at *4 (E.D.Tex. Oct. 5, 2010) ("Courts are especially unwilling to issue a protective order merely to spare the defendant embarrassment where, as here, the defendants are public officials and the issues in the case are matters of public concern.").

■ Here, Plaintiffs have asserted several Federal Tort Claims and *Bivens* claims against the United States Defendants, *see Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); 28 U.S.C. §§ 1346(b), 2671–2680, accusing Defendants of, among other things, using excessive force and assaultive conduct in the unreasonable search of their home. The conduct of federal law enforcement agents falls within those matters that would constitute issues of legitimate public concern. *See Carnaby v. City of Houston,* No. 4:08–cv–1366, 2008 WL 4546606, at *2 (S.D.Tex. Oct. 10, 2008) ("The public has a particular interest in the instant case because it involves matters of public safety and the deadly force policies of the local police department."). The *Pansy* court emphasized that "a strong presumption against entering or maintaining confidentiality orders strikes the appropriate balance by recognizing the enduring beliefs underlying freedom of information laws: that an informed public is desirable, that access to information prevents governmental abuse and helps secure freedom, and that, ultimately, [the] government must answer to its citizens." 23 F.3d at 792. It would ap-

pear then that the public's interest in "records indicating official misconduct, abuse of power, or constitutional violations by Defendants" is particularly legitimate and important, while Defendants privacy interest in these records is diminished because of their status as public officials. Such documents should therefore be made available to Plaintiffs without restriction.[3] *See Segraves v. City of Zachary,* No. 08–357–JJB–SCR, 2009 WL 3764010, at *1 (M.D.La. Nov. 9, 2009) (not limiting the disclosure of "all internal affairs records, prior civilian complaints, and prior lawsuits against all defendant officers"); *Carnaby,* 2008 WL 4546606, at *3 (ordering those investigative files and personnel files of the defendant police officers that had been requested to be "made available to the [p]laintiff, without further restriction").

■ Although the public may have a legitimate interest in "records indicating official misconduct, abuse of power, or constitutional violations by Defendants," that same interest would not extend to a number of the documents found in the "personnel files of law enforcement agents."[4] (Dkt. No. 87, at 4); *see Henderson v. Turner,* No. 11–0039, 2012 WL 5354616, at *4 (M.D.La. Oct. 29, 2012) (citing cases finding that police officers' personnel files contain "certain types of information, such as documents relating to medical and annual leave, income taxes, weapons and uniform purchases, ... military history, and financial and salary information" which "were not relevant to [a] civil rights claim"); *Major v. City of Baton Rouge,* No. 09–261–DLD, 2010 WL 1979431, at *2–3

---

**3.** Defendants have expressed concern that records of "any *unfounded* allegations of abuse of power, official misconduct, or constitutional violations" could be made public with such an order. (Dkt. No. 87, at 10) (emphasis added). However, the public should be able to distinguish between unfounded allegations and those that have been substantiated, and thus the Court fails to see why unfounded allegations would cause "great potential harm to the Individual Federal Defendants." (*Id.*); *see also Betzer v. Stephens,* No. Civ.A. 03–169, 2003 WL 22175993, at *4 (E.D.La. Sept. 19, 2003) (ordering the production of all "unsustained complaints on the defendant officers" contained in the personnel files and internal affairs files of the officers, not subject to a protective order).

**4.** It is not entirely clear from the voluminous briefing before the Court exactly which documents have yet to be produced, and therefore which documents Plaintiffs seek unfettered access to and which documents United States Defendants want limited to purposes of this litigation. Neither party explained to the Court which specific Requests for Production were at issue. However, because Defendants have used the phrase "personnel files" without limitation, the Court will address those records in a personnel file which may not constitute "records indicating official misconduct, abuse of power, or constitutional violations by Defendants."

(M.D.La. May 12, 2010) (considering that employment files contain "personal information, such as rate of pay, health information, ... etc." that was not subject to disclosure); *D'Antoni,* 1997 WL 627601, at *3 (refusing to compel production of the "officers' medical records, some of which are contained in their personnel files"). Any of this information which is produced by Defendants in response to the outstanding requests for production should remain confidential among those involved in the litigation of this case. In fact, any documents which do not constitute "records indicating official misconduct, abuse of power, or constitutional violations by Defendants" are to be protected from public disclosure.

Accordingly, "Plaintiffs' Motion to Compel" is GRANTED, but with the aforementioned limitations. The parties are to fashion an appropriate confidentiality agreement amongst themselves. If the parties are so inclined, they may submit to the undersigned an agreed upon protective order, consistent with this order. United States Defendants have until June 21, 2013 to produce the requested records, subject to an appropriate agreement.

IT IS SO ORDERED.